SWAN & FINCH CO. v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. January 7, 1902.)

No. 69.

CUSTOMS DUTIES—FISH OIL.

Tariff Act 1897, par. 42, places a duty on seal, herring, whale, and other fish oils; and paragraph 568 exempts from duty grease and oils, excepting fish oils, commonly used in soap making, wire drawing, or for stuffing or dressing leather, and which are fit only for such purposes. *Held*, that oil known as "cod oil," made from putrid fish livers, which, while used principally for dressing leather, is fit for some other purposes not enumerated, and, while not technically known in the trade as a "fish oil," is subject to the duty; it not being within the exemption, and the phrase "fish oils" not having been employed in a technical sense.

Appeal from the Circuit Court of the United States for the Southern District of New York.

Appeal by the Swan & Finch Company from a judgment affirming a decision of the board of United States general appraisers affirming the classification by the collector of customs as to certain importations made by appellant.

This cause comes here upon appeal from a decision of the United States circuit court, Southern district of New York (109 Fed. 949), affirming a decision of the board of general appraisers which sustained the collector of the port of New York in assessing for duty certain oil extracted from the livers of codfish, and known as "cod oil." The article is made from the unhealthy, putrid livers of codfish, and in this respect differs from cod-liver oil, which is extracted from the fresh livers of such fish.

Wickham Smith, for appellant.
D. Frank Lloyd, for appellee.

Before WALLACE and LACOMBE, Circuit Judges.

LACOMBE, Circuit Judge (after stating the facts). The collector assessed the article for duty under paragraph 42 of the tariff act of 1897, which reads as follows:

"(42) Seal, herring, whale, and other fish oil, not specially provided for in this act, eight cents per gallon."

The importers claimed free entry under paragraph 568 of the free list, which reads:

"(568) Grease, and oils (excepting fish oils), such as are commonly used in soap-making or in wire-drawing, or for stuffing or dressing leather, and which are fit only for such uses, and not specifically provided for in this act."

The record abundantly sustains the contention of the importers that cod oil is commonly used for stuffing or dressing leather. Indeed, but a small fraction of it is used in the arts for any other purposes. But "common use" or "predominant use" is not the only qualification. The oil must also be one "fit only" for the enumerated uses. It matters not that some other article is better fitted and more frequently used for the nonenumerated use, so long as cod oil is fit for such use. The evidence shows that it is fit, inter alia, for the manufacture of blacking, and has been so used to a substantial extent. This fact would remove cod oil from the designation of the main clause in the paragraph; but, if the evidence on that branch of the case were less persuasive than it is, we are still of the opinion that cod oil is not covered by the paragraph, being within the exception. The testimony as to commercial designation is voluminous, the importers undertaking to sustain the proposition that the words "fish oils" had a commercial designation which so restricted the class of articles they covered as to exclude cod oil. The witnesses are not entirely in accord, but the phraseology of the tariff indicates quite plainly the meaning which congress gave to those words, which must be assumed to have the same meaning in both paragraphs of the same act. One of the witnesses for appellant (a dealer in oils) indicated the use of the phrase in common speech:

"Any man who is not in the oil trade will say every oil that is made from the fish would be called 'fish oil,' though commercially different designations are used to distinguish one oil from the other."

Now, it seems quite clear that congress used the words "fish oils" in the sense in which they are used in common speech. Paragraph 42 provides for "seal, herring, whale, and other fish oil." Evidently these words are not used with technical precision; for neither the seal nor the whale is a fish, and therefore oil made from them, or from any part of them, is not technically fish oil. Nor are the words used with a close appreciation of commercial distinctions; for, if the evidence in this case be held sufficient to establish the proposition that cod oil is not known to the trade as a "fish oil," it is equally sufficient to establish the proposition that neither seal oil nor whale oil is fish oil in trade; but congress understood at least whale oil to be a fish oil, and therefore used the phrase "seal, herring, whale and other fish oil."

The decision of the circuit court is affirmed.